IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

```
IN RE:                                )
GLOBE BUILDING MATERIALS, INC.        )

GORDON E. GOUVEIA, Chapter 7          )
Trustee of Globe Building             )
Materials, Inc.,                      )
                                      )
Plaintiff-Appellee,                   )
                                      )
vs.                                   )    NO. 2:05-CV-269
                                      )
THE RDI GROUP, INC. D/B/A REICHEL     )
& DREWS, INC.,                        )
                                      )
Defendant-Appellant.                  )
```

## OPINION AND ORDER

This matter is before the Court on an appeal from the United States Bankruptcy Court for the Northern District of Indiana's May 12, 2005 order, filed by Defendant/Appellant, The RDI Group, Inc., d/b/a Reichel & Drews, Inc. ("RDI"). For the reasons set forth below, the May 12, 2005 order of the bankruptcy court is **AFFIRMED**.

BACKGROUND

The factual background in this case is undisputed. RDI manufactures custom built industrial machinery for the manufacture of roofing and asphalt products and for coil slitting. (Joint Stip. ¶ 6.) RDI designs and builds machinery in response to a customer's order. (*Id.* ¶ 6.) Additionally, RDI also provides and

sells spare and consumable parts for use in the machines it sells. (*Id*. ¶ 6.)

Globe Building Materials, Inc. ("Globe") manufactures roofing products. (Joint Stip. ¶ 7.) In January and February 2000, Globe contracted with RDI to design, build, and deliver a line of "In-Line Lamination Equipment" for Globe ("Equipment Line") that would expand an existing plant to accommodate the manufacture of laminated roofing products. (*Id*. ¶¶ 7-8.) The equipment line was to consist of a series of discrete components of machinery. (*Id.* ¶ 11.) The separate components of the line were to be manufactured by RDI according to a schedule and shipped to Globe for assembly as the components were completed. (*Id*. ¶ 15.) Due to the size of the project, the parties expected that it would take RDI nearly a year to design, build, and deliver the Equipment Line. (*Id.* ¶ 8.)

The price for the entire Equipment Line was originally quoted at $4,080,950 but was later amended by the agreement of the parties to a final price of $4,210,745. (*Id*. ¶ 9.) The parties agreed to a schedule of progress payments. (*Id*. ¶ 12.) Globe was scheduled to make a first payment of $100,000 on January 28, 2000. *Id.* Following this initial payment, Globe was to make a $50,000 payment on February 14, 2000, and a $258,095 payment on February 29, 2000. *Id.* At this point, the parties expected that the amounts would total 10% of the total cost of the project. *Id.* After the first 10% was paid, Globe was to make nine more payments, each consisting

-2-

of 10% of the purchase price.  *Id.*  The first eight of these payments by Globe were to be made by the end of each consecutive month from March 2000 until October 2000.  *Id.*  The final 10% payment was to be made upon start-up or 90 days of shipment.  *Id.*

It is undisputed that Globe deviated from the payment schedule.  (Joint Stip. ¶ 12.)  Although Globe's October 31, 2000 payment was made two days late on November 2, 2000, Globe was essentially current on its amount due as of the November 2, 2000 payment of $419,891.  *Id.*  As of the November 2, 2002 payment, Globe had paid $3,786,555.72 towards the $4,210,745 total cost of the Equipment Line.  *Id.*

Even though production, delivery, and payment for the Equipment Line was done in increments, the bankruptcy court found, based upon the testimony of Michael Queisser, RDI's sales manager, that the whole transaction concerned one single integrated system (rather than a series of severable component purchases that were to be assembled into a completed unit).  The Equipment Line was sold to Globe as a whole unit and separate prices were not charged for the separate components.  (Appellant's Br., p. 1.)

Globe issued RDI a progress payment for $419,891 on November 2, 2000 (the "November Payment").  (Joint Stip. ¶ 12.)  The November Payment is the principal payment which the Trustee now seeks to recover.  RDI made two shipments before the disputed November Payment and also held onto certain components of the

-3-

Equipment Line per Globe's request ("retained components"). (*Id.* ¶ 16.) The retained components were allocated a cost of $910,714.17. (*Id.* ¶ 16.) Five shipments occurred after the November Payment, but before RDI became aware that Globe filed for bankruptcy in January 2001, and they were allocated a cost of $1,578,033.62. (*Id.* ¶ 17.)

On January 19, 2001, Globe filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Globe's case was converted to a Chapter 7 case on April 4, 2001. Gordon E. Gouveia was appointed the Chapter 7 Trustee of Globe ("Trustee") and he continues to act as the Chapter 7 Trustee for Globe's estate.

Shortly after filing for bankruptcy, Globe stopped its business operations, and abandoned the planned expansion involving RDI's Equipment Line. (Appellant's Br., p. 5.) Except for the retained components, the Trustee sold the components of the Equipment Line that were in Globe's possession at an auction. *Id.* The never used Equipment Line sold for approximately $825,000. *Id.*

The Trustee has sought to recover the November Payment as a payment made during the preferential period before the bankruptcy case was initiated. In turn, RDI has asserted the new value affirmative defense under 11 U.S.C. section 547(c)(4).

This is an appeal from a judgment of the United States Bankruptcy Court for the Northern District of Indiana, issued by the Honorable J. Philip Klingeberger, on May 12, 2005 ("bankruptcy

-4-

order"). The bankruptcy court found that $59,247.37 of the November Payment was attributable to a separate transaction for spare parts, but that the remaining $360,643.63 of the November Payment was a preferential payment recoverable to the Trustee under 11 U.S.C. section 547(b).

The parties agree that this transaction was a preferential transfer under section 547(b), but RDI contends that the new value defense under 11 U.S.C. section 547(c)(4) applies. The parties have broken down their arguments into subparts. RDI contends that: (1) 11 U.S.C. section 547(c)(4) does not preclude from the definition of new value any value provided under an existing agreement; (2) a creditor provides new value even though the debtor does not use the value in the manner originally intended; and (3) factually, the new value provided to Globe enhanced Globe's assets by an amount greater than the November Payment. Globe argues that: (1) the performance of a preexisting contractual duty does not constitute new value for purposes of section 547(c)(4); and (2) Globe's prepayment of the Equipment Line components disqualifies them from consideration as new value under section 547(c)(4). This appeal is thus based on the statutory interpretation of 547(c)(4).

DISCUSSION

In reviewing a bankruptcy court's decision pursuant to 28 U.S.C. section 158(a), the district court functions as an appellate

-5-

court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling.  Fed. R. Bankr. P. 8013.  Appellate courts apply the same standards of review in examining bankruptcy court decisions that govern appeals in other cases.  *See Smoker v. Hill & Assocs., Inc.*, 204 B.R. 966, 971 (N.D. Ind. 1997).  Accordingly, this Court reviews the bankruptcy court's conclusions of law de novo, *id.*, and the bankruptcy court's findings of fact under the clearly erroneous standard.  Fed. R. Bankr. P. 8013; *see also In re Lefkas Gen. Partners*, 112 F.3d 896, 900 (7th Cir. 1997).  A finding is considered clearly erroneous where "although there is enough evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

RDI raises one issue on appeal: whether the new value affirmative defense applies in an installment contract where goods were supplied according to agreement after a preferential payment was made.  The bankruptcy court determined that the agreement between Globe and RDI constituted an installment contract whereby no new value was produced for Globe as a direct result of the preferential payment made on November 2, 2000.

The bankruptcy court found that the transaction between Globe and RDI was a contract indivisible in nature.  (Bankr. Order, p. 12.)  The contract was for the sale of one machine, rather than

-6-

components of the machine.  (*Id*.)  Further, the bankruptcy court held that the November Payment did not create new value under section 547(c)(4) because RDI provided nothing to Globe that it was not already commercially obligated to provide under the terms of the parties' contract.  (Bankr. Order, p. 13.)  This Court will review the bankruptcy court's decision as a mixed question of law and fact and apply the de novo standard.

Preferential payments are explained statutorily in 11 U.S.C. section 547(b), which provides:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made–
>     (A) on or within 90 days before the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if–
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The parties do not dispute that the November Payment made by Globe to RDI was a preferential payment under this provision. However, RDI asserts an affirmative defense under section 547(c)(4) which provides:

-7-

>    (c)   The trustee may not avoid under this
>          section a transfer–
>                      * * *
>          (4) to or for the benefit of a
>          creditor, to the extent that, after
>          such transfer, such creditor gave
>          new value to or for the benefit of
>          the debtor–
>              (A) not secured by an
>          otherwise    unavoidable
>          security interest; and
>              (B) on account of which
>          new value the debtor did
>          not   make   an   otherwise
>          unavoidable transfer to
>          or for the benefit of
>          such creditor . . .

The statutory definition for new value provides little guidance on this issue as it defines new value as "money or money's worth in goods, services, or new credit . . . ." 11 U.S.C. § 547(a)(2). The burden of proof on establishing the new value affirmative defense is on RDI. 11 U.S.C. § 547(g).

The overarching policy goal behind the new value defense is that where new value is given to the debtor, the preference has been repaid to the estate. *In re Prescott*, 805 F.2d 719, 727 (7th Cir. 1986). Another policy reason behind the new value defense is to encourage creditors to maintain working relationships with insolvent debtors. *Jones Truck Lines, Inc. v. Full Service Leasing Corp.*, 83 F.3d 253, 257 (8th Cir. 1996); *In re Jet Florida Sys., Inc.*, 841 F.2d 1082, 1083 (11th Cir. 1988) (per curiam). The new value defense also allows for equal treatment of creditors. *In re Jet Florida Sys.*, 841 F.2d at 1083. "The subsequent advance

exception promotes these general policy objectives because its utility is limited to the extent to which the estate was enhanced by the creditor's subsequent advances during the preference period." *Id*. at 1083-84 (quotations omitted).

This Court agrees with the bankruptcy court that this fact pattern is distinct and has not been addressed by any court at this point.  The most analogous cases applying the new value defense come from other circuit courts of appeals and concern disputes over leases.

In *In re Jet Florida System*, the Eleventh Circuit held that there was no new value to the debtor where preferential payments were made on premises leased and available to the debtor, but that were unused during the relevant time frames.  841 F.2d at 1082-83. The Court noted that in order to provide new value to the debtor, the transaction must provide the debtor with a material benefit. *Id*. at 1084.  In this situation, the leased premises were not being used by the debtor, did not replenish the debtor's estate, and were actually depleting the estate.  *Id*.

In another case involving a lease, *Southern Technical College, Inc. v. Hood*, the trustee sought to recover preferential payments made by the debtor in accordance with the debtor's lease of nonresidential real property.  89 F.3d 1381, 1383 (8th Cir. 1996). The Court held that the debtor's continued use of the property constituted subsequent new value under section 547(c)(4),and barred

-9-

the trustee's recovery of the payments. *Id*. at 1385. The Eighth Circuit determined that the relevant inquiry in determining new value is whether the new value replenished the estate. *Id*. at 1384; *see also Matter of Kroh Bros. Dev. Co.*, 930 F.2d 648, 652 (8th Cir. 1991). In determining that the possession of leased premises constituted new value, the Court focused on the fact that the debtor received new value when it continued to use and occupy the premises in a way that enabled the debtor to continue their operations. *Southern Technical College,* 89 F.3d at 1384. The value that the debtor received by maintaining possession was shown by a generation of income which replenished the estate and increased the debtor's chances of survival, thus benefitting all of the debtor's creditors. *Id*.

Of course, there are conceptual distinctions between a lease of property and the installment payment plan that is at issue in this case. A lease is a divisible obligation such that the lessee typically makes a rental payment for the benefit of a set period of time in possession of the premises. The lessee receives a measurable benefit from possession in return for each rent payment the lessee makes. For example, a lessee that pays $1000 per month in rent and makes his $1000 payment on the first day of a month can reasonably determine that he is making his payment for the receipt of having possession of the leased premises for that month.

The installment payment plan at issue here is a case where the

debtor made scheduled payments that, in sum, constituted the purchase price of one discreet piece of machinery. The parties did not anticipate that each payment was to be received in such a manner to entitle the debtor to receive a portion of the total machine. This Court does not find it necessary to determine exactly what percentage of the total Equipment Line was received before or after the preferential payment was made. The contract between the parties did not anticipate (and is not conducive) to the individual payment and benefit analysis that is applicable to a lease of property. The parties contracted for the purchase of one complete Equipment Line for one total price, and the schedule of payments for the Equipment Line was not drawn in a manner that entitled Globe to a certain portion of the Equipment Line after each payment, but rather was drawn on a percentage basis to make the total purchase price manageable.

The components that Globe received subsequent to the preferential payment were not made in consideration of the payment that was received by RDI. Although RDI was manufacturing the Equipment Line in consideration of the total purchase price, RDI did not require a certain percentage of the purchase price in payments before RDI would ship a component or set of components. The manufacture and shipment of the components of the Equipment Line was essentially an independent set of transactions then the payments made towards the overall purchase price. The payments

made by Globe did not trigger RDI to ship certain components nor were the payments labeled as consideration for certain components. Globe did not negotiate each component's individual price, but instead negotiated a total price from RDI.

Despite the differences between the lease cases outlined above, the reasoning of the decisions is persuasive to the decision of this case. As identified in these cases, the relevant inquiries in this case are whether Globe received a material benefit from the Equipment Line, and whether the benefit received replenished Globe's estate in such a manner to make Globe generate income to the benefit of Globe's creditors as a class. It is clear that both of these inquiries are answered in the negative, and that no new value was provided to Globe as a result of the preferential payment it made to RDI.

Globe received a good portion of the components necessary to complete a fully functional Equipment Line that was intended by Globe to expand its product line to make Globe more profitable. However, the fact remains that Globe never used the Equipment Line that RDI manufactured. Globe's investment in the Equipment Line never actually became an investment; the Equipment Line was never actually utilized, and it never benefitted Globe. The Equipment Line never produced a product that Globe could sell and thus receive a material benefit.

Not only did the Equipment Line never produce a material

benefit for Globe, the Equipment Line actually depleted Globe's estate to the detriment of the entire class of Globe creditors. Globe made payments to RDI and spent money hiring an engineer to assemble the components to complete an Equipment Line that Globe never used. The November Payment never had any benefit to Globe's estate, never produced a product that could be sold to replenish the estate, and did not sell at a price that made the transaction beneficial to Globe. The transaction itself was not profitable. Globe made payments totaling $3,786,555.72, yet sold the Equipment Line for approximately $825,000. This transaction clearly did not benefit the class of Globe's creditors. Therefore, the preferential payment did not provide any new value to Globe and the defense is inapplicable here.

RDI's argument that Globe would not have received all of the components it received and sold had it not been for Globe's November Payment is off the mark. Under this contract, RDI was sending Globe components as they were completed, regardless of what amount had been paid by Globe. Globe actually could have been in possession of more of the Equipment Line had it been willing to take possession of the components when they were ready. It is clear that RDI was not conditioning shipment of components upon the payments made by Globe, but rather was fulfilling its one obligation under the contract - to manufacture one complete Equipment Line. This is further evidenced by the fact that RDI

never took issue with Globe deviating from the payment schedule.

Thus, this Court agrees with the conclusion of the bankruptcy court - that Globe made a preferential transfer to RDI that did not provide new value to Globe's estate and it should therefore be returned to Globe's estate.

Accordingly, this Court **AFFIRMS** the bankruptcy court's May 12, 2005 judgment.

CONCLUSION

For the reasons set forth above, the May 12, 2005, order of the bankruptcy court is **AFFIRMED**.

**DATED:  December 2, 2005          /s/RUDY LOZANO, Judge**
**                                  United States District Court**